# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

KEVIN STUBBS, et al.,

          Defendants.

Case No. 2:13-cr-00381-APG-CWH

**FINDING AND RECOMMENDATION**

This matter was referred to the undersigned Magistrate Judge on Defendant Kevin Stubbs' Motion to Suppress Evidence (#34), filed on December 12, 2013, and the Government's Response (#41), filed December 13, 2013. The undersigned conducted a hearing in this matter on January 31, 2014. Defendant Corey Stubbs did not join the motion.

## BACKGROUND

On October 8, 2013, the Grand Jury returned an Indictment charging Defendant Kevin Stubbs ("Stubbs") with one count of being a felon unlawfully in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (#1). The Government also seeks forfeiture under 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c). Stubbs was detained pending trial. (#21). On December 10, 2013, the Government's motion to continue the trial date to accommodate a witness was denied. (#44). Immediately thereafter, Defendant Stubbs filed a motion to suppress (#34) and requested expedited consideration.[1]

---

[1] The motion to suppress was filed close in time to co-Defendant Corey Stubbs' motion to preclude evidence (#36), which was based largely on alleged wrongdoing by the prosecutor. At hearing, the Honorable Andrew P. Gordon, the presiding District Judge in this matter, noted that the motion to suppress (#34) and motion to preclude evidence (#36) raised "significant issues which warrant an

The motion to suppress (#34) is straightforward: Stubbs requests that the firearm seized during the underlying vehicle search should be suppressed because the search violated the Fourth Amendment. The Government argues that the motion to suppress should be denied because (1) Stubbs lacks standing to object to the search, (2) the firearm was in plain view, and (3) the warrantless search of the car was appropriate. *See* Govt's Resp. (#41). The undersigned conducted an evidentiary hearing on the motion on January 31, 2014, wherein the Court heard argument from counsel and took testimony from Las Vegas Metropolitan Police officers, Officer Kyle Race ("Officer Race") and Officer Daniel Hawkins ("Officer Hawkins").

The relevant date underlying the challenged search and seizure is September 27, 2013. On that date, Officer Race was conducting surveillance at the 9700 block of Powell Plateau in Las Vegas, Nevada.[2] At the time of surveillance, Officer Race was in plain clothes and an unmarked vehicle. Officer Race testified that prior to initiating surveillance, he and other officers received information that a newer model, black Chevy Camaro had been embezzled. Officer Race testified further that the investigating officers had an idea who might be operating the vehicle prior to initiating the surveillance. The vehicle was not at the surveillance location initially, but Officer Race observed the vehicle arrive later during his surveillance. He testified that only one person exited the vehicle, whom he recognized as Defendant Corey Stubbs.[3] Officer Race testified that he was familiar with Corey Stubbs and knew him to be a convicted felon.[4]

At some point during his surveillance, Officer Race contacted additional officers to assist in

---

evidentiary hearing, and that it is in the best interest of both Defendants for those issues to be resolved prior to trial." (#48). Thus, the trial was continued and the motions referred to the undersigned to conduct an evidentiary hearing. *Id*. Defendant Corey Stubbs' motion (#36) has been denied as moot.

[2] During cross-examination, Stubbs' attorney identified the exact address as 9735 Powell Plateau Court.

[3] Officer Race identified Corey Stubbs as the driver of the vehicle.

[4] He also testified that he was familiar with Defendant Kevin Stubbs, whom he also knew to have a prior felony conviction.

the surveillance.[5] Eventually, Officer Race saw Corey Stubbs return to the vehicle accompanied by Kevin Stubbs. After a brief conversation with an individual in a white vehicle parked in the driveway, Kevin Stubbs entered the passenger side of the Chevy Camaro. At this point, believing the vehicle was about to be driven away, Officer Race radioed for patrol units to stop the vehicle. He testified that within moments, patrol units arrived and blocked the vehicle and its occupants from escaping. He recalled that at least one of the patrol units had its emergency lights activated. He testified that once the patrol units approached and stopped the vehicle, Kevin Stubbs exited the vehicle and ran towards the front of a residence. Officer Race pursued Kevin Stubbs on foot and before Stubbs was able to enter the residence, he was taken into custody.

After Kevin Stubbs was taken into custody, Officer Race testified that he looked back toward the vehicle and saw that the passenger door was open. Officer Race went back to the vehicle and looked inside it. He testified that he did not enter the vehicle. Looking inside the vehicle, Officer Race saw a semiautomatic handgun on the passenger seat of the vehicle. Officer Race further testified that to his knowledge, in documenting the vehicle and evidence: the gun was not moved, the door was not opened, and no special aid was needed to view the interior of the vehicle. Officer Race later obtained statements from Kevin Stubbs, who had no information about the vehicle.

On cross-examination, Officer Race confirmed the short time period that lapsed from the time he asked for the assistance of marked patrol units and when the units arrived. He did not dispute that a photograph depiction in defense exhibit B shows the right passenger door closed and the window up. He did not dispute that some photograph depictions from exhibit B appeared to indicate that the vehicle door was opened at some point to take photographs. Though none of the surveillance, arrest, or custodial statements taken from Kevin Stubbs were recorded, Officer Race confirmed that Stubbs stated that he had no idea the vehicle had been embezzled. He further testified that the vehicle was rented to a Richard Cruz, not Kevin Stubbs.

---

[5] The timeline is not clear, nor particularly relevant in this instance, but it appears Officer Race conducted surveillance on the vehicle for approximately an hour and half before Corey Stubbs and Kevin Stubbs returned to the vehicle.

The Government also called Officer Hawkins to testify at the evidentiary hearing. His testimony regarding the events leading up to Kevin Stubbs arrest was substantially the same as Officer Race. He was a member of the unit tasked with recovering the reportedly embezzled vehicle.[6] He participated in the surveillance and was familiar with both Kevin and Corey Stubbs, including their status as prior convicted felons. He testified that prior to initiating surveillance, the officers were provided an address where it was believed Kevin and Corey Stubbs resided. He did not participate in the initial set up of the surveillance. When he arrived on the scene, the vehicle was already parked in front of the residence. He also observed both Kevin and Corey Stubbs at the residence, and he witnessed them get in the vehicle with Kevin Stubbs in the passenger seat. He confirmed the events surrounding the stop of the vehicle, including that Kevin Stubbs exited the passenger side of the vehicle and ran toward the residence. He assisted with the capture and arrest of Kevin Stubbs.

Eventually, Officer Hawkins returned to the vehicle and testified that its condition had not been changed, modified, or altered by law enforcement personnel. He testified that when he returned to the vehicle the passenger side door remained open. He looked into the vehicle and saw a firearm sitting on the front passenger seat of the vehicle. He did not have difficulty viewing the firearm from his position outside the vehicle. He did not enter the vehicle to view the handgun. He did not require the assistance of any device to view the handgun.

On cross-examination, Officer Hawkins testified that he was present when photographs of the scene were taken, although he was not the photographer. He was asked a series of questions regarding the photographs depicted in defense exhibit B.[7] He was unable to testify as to the timing of the photographs taken at the scene. He was unable to testify regarding whether another officer had closed the passenger side door of the vehicle. He confirmed that Kevin Stubbs indicated he

---

[6] He testified that the vehicle was reported embezzled, meaning it was rented but not returned to a car rental agency.

[7] Photograph 7 in the series of photographs included in defense exhibit B depicts the passenger side of the Camaro with the door closed. Photographs 8 and 9 depict the pistol on the front passenger seat visible through an open passenger side door.

had knowledge regarding the status of vehicle as embezzled or stolen. He confirmed that Kevin Stubbs was in custody when the firearm was found. On redirect, Officer Hawkins confirmed that the passenger side door of the vehicle remained open from the time Kevin Stubbs fled the vehicle until the time Officer Hawkins looked into the vehicle and saw the firearm.

## ANALYSIS

As the parties acknowledge, the critical preliminary question that must be addressed is whether Defendant Kevin Stubbs has sufficient standing to challenge the constitutionality of the vehicle search. The briefing offered by the parties on this issue was limited. Defendant does not address it in his initial motion. The Government cursorily posits that the Defendant is unable to meet his burden to show he has standing "because it is virtually universally accepted that the possessor or occupant of a stolen car has no legitimate expectation of privacy in that car."

The parties addressed the standing question more fully during oral argument at the January 31, 2014 evidentiary hearing. Prior to taking live testimony, defense counsel offered the police report as an exhibit to demonstrate what Defendant Kevin Stubbs told the police upon his arrest - that he did not know the vehicle in question was embezzled. The Government argued that Stubbs' statement is immaterial because, at the time the vehicle was searched, he was a passenger in the vehicle and did not have a demonstrated possessory right in the vehicle.[8] In closing, defense counsel reiterated Kevin Stubbs' statement to the police after his arrest that he did not know the car had been embezzled, and that the Government presented no evidence demonstrating that Kevin Stubbs knew the car had been embezzled. Under the circumstances, and in reliance on *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002), defense counsel argues that Kevin Stubbs has standing to challenge the search of the vehicle even without a possessory or ownership interest in the vehicle.

As set forth below, the undersigned finds that Stubbs has not met his burden to show that he has standing to challenge the search of the vehicle. The Court separately finds that, even assuming

---

[8] The Government raised, for the first time in closing, an alternative argument that Stubbs abandoned the vehicle when he fled thereby forfeiting his right to challenge the search.

standing, the search of the vehicle was appropriate under the "plain view" exception to the Fourth Amendment's general warrant requirement.

### 1. Standing

An individual seeking to exclude evidence allegedly obtained in violation of the Fourth Amendment must have standing to challenge the illegal conduct that led to the search for or seizure of the evidence. *United States v. Pulliam*, 405 F.3d 782, 785-786 (9th Cir. 2005) (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). "The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (quoting *Rakas*, 439 U.S. at n. 1). "To invoke the protections of the Fourth Amendment, a person must show he had a 'legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). To establish a legitimate expectation of privacy a person must show (1) a subjective expectation of privacy (2) that society is prepared to recognize as objectively reasonable. *United States v. Cayment*, 404 F.3d 1196, 1199-1200 (9th Cir. 2005).

A person does not possess a reasonable expectation of privacy in a vehicle in which he has no lawful ownership or possessory interest. *United States v. Thomas*, 447 F.3d 1191, 1197 (9th Cir. 2006) (finding unauthorized driver has no privacy interest in a rental car); *United States v. Pulliam*, 405 F.3d 782, 486 (9th Cir. 2005) ("a passenger with no possessory interest in [a car] . . . has no reasonable expectation of privacy in a car that would permit [his] Fourth Amendment challenge to the a search of the vehicle.") (citation omitted). "[P]ossessory or ownership interests" are not narrowly defined. *Thomas*, 447 F.3d at 1197. "A reasonable expectation of privacy may be shown 'either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Id*. (quoting *Rakas*, 439 U.S. at n. 12). Thus, even though a defendant may lack an ownership interest, he may have standing to challenge a search upon showing "joint control" or "common authority." *Id*. at 1198.

Stubbs makes no argument that he had any possessory right to, or control of the vehicle. His argument is that he has standing because he did no realize the vehicle had been stolen or embezzled. He cites no authority for the proposition that a lack of knowledge regarding whether a

vehicle is stolen or embezzled is sufficient to confer standing for purposes of challenging the search of the vehicle. His lack of knowledge simply underscores the finding that he had no demonstrated right to control or possess the vehicle. Simply stated, he was a passenger in a vehicle that he knew he did not own and in which he had no demonstrated right to control or possess. He has not carried his burden to show he has standing to challenge the search of the vehicle that resulted in seizure of the firearm because he "has no reasonable expectation of privacy . . . that would permit [his] Fourth Amendment challenge to a search of the car." *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (alteration in original) (citations omitted).

The Court is not persuaded by Stubbs reliance on *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002) to support his argument for standing. *Colin* stands for the unremarkable proposition that occupants of a vehicle may have standing to challenge a search as the illegal fruit of some other constitutional violation even if they do not have standing to challenge the search itself. *Id.* (finding that both the driver and passenger of a vehicle had Fourth Amendment standing to challenge the stop of a vehicle the police suspected was stolen); *Pulliam*, 405 F.3d 782 (finding that a defendant may contest the lawfulness of his own detention and seek to suppress evidence found in a vehicle as fruit of an illegal detention even if the defendant lacks the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle); *Twilley*, 222 F.3d 1092 (finding that the defendant could challenge the stop of the vehicle even with no possessory or ownership interest in the vehicle). In neither his motion nor during the evidentiary hearing did Stubbs challenge the surveillance of the vehicle, stop of the vehicle, or his arrest. His singular challenge throughout has been the search of the vehicle, for which the Court has determined Stubbs does not have standing to directly challenge.[9]

**2. Plain View**

Even assuming that Stubbs has standing to challenge the search of the vehicle, the Court finds that the firearm was lawfully seized because it was in plain view. Incriminating evidence in

---

[9] The government also argued for the first time at the hearing that Kevin Stubbs does not have standing because he abandoned the vehicle. Because the court has determined that Stubbs has no standing, the abandonment issue is not analyzed.

plain view can be seized if the officer does not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Horton v. California*, 496 U.S. 128, 136 (1990); *see also U.S. v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005) ("To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent."); *Texas v. Brown*, 460 U.S. 730, 740 (1983) (plurality opinion) ("There is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (internal citations omitted); *United States v. Harlson*, 212 Fed. Appx. 694, 695 (9th Cir. 2006) (same).

      Here, both officers testified that when they initially returned to the vehicle after arresting Stubbs, the passenger door of the vehicle was open and the firearm in plain view on the passenger seat. It is true that the series of photographs admitted as evidence show the passenger door of the vehicle was closed prior to the photographs being taken and then opened to photograph the interior. Neither officer was able to explain when, why, or who closed the passenger door. Nevertheless, they both testified credibly that the door was left open after Stubbs fled the vehicle and the firearm was in plain view. The Court finds this testimony credible based on Government exhibits 1, 2, and 3. The officers were in a location they were lawfully permitted to be in when they observed the firearm. The officers knew that Stubbs was a convicted felon; therefore, the firearm was incriminating. According, the Court finds that the plain view exception to warrant requirement applies and the firearm was not illegally seized.[10]

      In sum, Defendant Kevin Stubbs does not have standing to challenge the search of the vehicle and, even if he did, the firearm was lawfully seized under the plain view exception to the warrant requirement.

      Based on the foregoing and good cause appearing therefore,

---

[10] The Court declines to address the Government's argument that the "vehicle exception" applies because Stubbs has no standing to challenge the search and the firearm was in plain view.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendants' Motion to Suppress (#34) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: February 27, 2014.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**